UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECTV, INC, et al., | No. C 04-3829 JSW (JL) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT** |
| ERIC LUCCHESI, | |
| Defendant. | |
| _____/ | |

The district court (Hon. Jeffery S. White) referred Plaintiff's motion for default judgment under Rule 55(b) Federal Rules of Civil Procedure to this Court for Report and Recommendation as provided by 28 U.S.C. § 636(b) and Civil Local Rule 72.

This Court considered the record in this case and recommends that the district court grant Plaintiff's motion and enter judgment pursuant to either 47 U.S.C. § 605(e)(4) or 18 U.S.C. § 2520(a) in the amount of $10,000.00 and for attorney's fees and costs in the amount of $3,270.00 and interest pursuant to 28 U.S.C. § 1961(a) calculated from the date of entry of judgment.

**Factual Background**

DirecTV ("Plaintiff") is a California company which broadcasts satellite television and other programming, with over 225 channels, to more than 10 million homes and businesses in the United States. DirecTV has spent at least $1.25 billion developing this system. All

broadcasts are encrypted, or electronically scrambled, in order to prevent unauthorized viewing. DirecTV provides access to its service on either a monthly subscription or pay-per-view basis. A customer who buys one of these services receives a DirecTV Access Card and other system hardware which, upon activation, allow the customer to view only those services paid for. On or about September 10, 2002, DirecTV served a Temporary Restraining Order and Impoundment Order, issued by the United States District Court for the Middle District of Florida, on a business named TestSat.tv ("TestSat"). DirecTV obtained TestSat's business records on or about September 16, 2002 pursuant to the raid. These records showed that Eric Lucchesi ("Defendant") purchased from TestSat, on or about March 18, 2002, a Pirate Access Device called a "Mikload." The primary purpose of such a device is the unauthorized viewing of encrypted television signals.

## Procedural Background

The Summons and Complaint in this action were properly served on Defendant on December 28, 2004. Defendant failed to appear or respond to the complaint and the Clerk entered his default on January 31, 2005. Plaintiff made four claims in the original complaint: violation of 47 U.S.C. § 605(a) unauthorized reception of satellite signals; violation of 18 U.S.C. § 2520(a) a private right of action for a violation of the criminal statute § 2511 for unauthorized interception of electronic communications; violation of 47 U.S.C. § 605(e)(4) for willful assembly or modification of devices or equipment; and conversion. Only the violations of § 2520 and § 605(e)(4) are asserted in Plaintiff's Motion for Default Judgment. The claims for a violation of § 605(a) and conversion are re-alleged in Plaintiff's Supplemental Brief in Support of Motion for Default Judgment. However, at oral argument, Plaintiff stated it no longer asserts these claims.

Plaintiff initially filed approximately 20 lawsuits with multiple defendants which were assigned to Judge Ware, who ruled that Joinder was improper and ordered each case to be brought separately. Acknowledging the potential statute of limitations issue, the court found that any separate action brought by DirecTV on or before August 26, 2004, would be deemed

a continuation of the original action. The complaint in this case was filed with the court September 10, 2004, after the extension mandated by Judge Ware.

**I. Motion for Default Judgment: FRCP 55(b)**

Plaintiff requests that the court enter default judgment against Defendant pursuant to Fed. R. Civ. P. 55(b)(2).

A court may not enter judgment by default against an unrepresented minor, an incompetent person, or a person in military service. FRCP 55(b)(2), (e). Defendant is not currently in the military according to his Military Status Report. Plaintiff asserts that Defendant is not an infant or incompetent person "[u]pon personal knowledge" of Plaintiff's Attorney Kimberly Colombo. (Colombo Dec. at 1).

By defaulting a defendant admits to the well-pleaded factual allegations of the complaint except for those regarding the amount of damages. FRCP 8(d). *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987), *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

Default judgment is not mandatory, rather, the district court has discretion to enter default judgment against a defendant. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) Factors the court may consider to determine if default judgment is appropriate include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### A. Section 2520

**1. Liability under Section 2520 for a Violation of Section 2511**

Plaintiff seeks statutory damages against Defendant for illegal interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a) of the ECPA. Section 2511(1)(a) of the ECPA states that "any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or

electronic communication [commits a federal criminal offense] . . . ." 18 U.S.C. § 2511. Pursuant to Judge Ware's order all claims brought under 18 U.S.C. § 2511, a criminal statute, are considered brought under 18 U.S.C. § 2520(a). Section 2520(a) creates a private right of action for any person "whose wire, oral, or electronic communication is intercepted." 18 U.S.C. 2520(a). The Ninth Circuit holds that satellite transmissions are electronic communications protected under the ECPA. "A person who views satellite television programming by use of a modified descrambler and a satellite dish 'intentionally intercepts' the satellite television signal, which is an 'electronic communication.'" *U.S. v. Lande*, 968 F.2d 907, 909 (9th Cir. 1992). A defendant who views unauthorized satellite television by use of a modified descrambler is in violation of the ECPA.

Plaintiff alleges, and by default Defendant admits, that on or about March 18, 2002, Defendant purchased a Pirate Access Device known as a "Mikload" from a vendor called TestSat. According to Jaime Sichler, Supervisor of DirecTV's End-User Development Group, the device purchased by Defendant is primarily designed for unauthorized access to DirecTV satellite programming without payment.(Sichler Dec. at 2). There are no legitimate commercial or private uses for the device. (Sichler Dec. at 2). By default Defendant admits that he purchased and used a device with the sole purpose of illegally intercepting DirecTV's encrypted satellite television in violation of §2511 allowing recovery for DirecTV under § 2520.[1]

Although some courts disagree, the Ninth Circuit holds that the interception and viewing of encrypted satellite television, is a violation of the ECPA. *Lande* 968 F.2d at 910-911. By default Defendant admits to the purchase and use of a device with the purpose of intercepting DirecTV's programming. This is a violation of §2511 which creates a private right of action for Plaintiff under §2520.

---

[1] Plaintiff has submitted appropriate evidence to show that Defendant did purchase and use the Mikload device. Additionally, in Judge Ware's original order, there is the basic assumption that, if the device was purchased, it was in fact used. Judge Ware requires no additional evidence to support this showing, citing *DirecTV, Inc., v. Huynh*, 318 F. Supp. 2d, 1122, 1128 (M..D. Ala. 2004) and *DirecTV, Inc. V. Getchel*, 2004 WL 1202717, 1 (D. Conn. May 26, 2004) for this proposition.

**2. Statute of Limitations**

Section 2520(e) states that, "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has reasonable opportunity to discover the violation." In consideration of this, in his initial order, Judge Ware found that any separate action brought by DirecTV on or before August 26, 2004, would be deemed a continuation of the original action. This case was filed September 10, 2004, after the extension allowed by Judge Ware. Plaintiff alleges Defendant purchased the device from TestSat March 18, 2002.

Plaintiff was first able to reasonably discover the purchase on September 16, 2002, when it obtained TestSat's business records pursuant to a Temporary Restraining Order served on TestSat September 10, 2002. Taking the date of reasonable discovery as the date that DirecTV received TestSat's business records this court finds that the complaint was filed within the statute of limitations.

Plaintiff argues that the statute of limitations should be tolled based on a theory of continuing violation of the ECPA. Defendant continued to use the Mikload and intercept DirecTV's programming until April 2004 when DirecTV was able to interrupt the data stream. Plaintiff also contends that the statute of limitations is an affirmative defense that Defendant admits to by default. Given that Plaintiff can adequately support its contention that this claim was properly filed within the statute of limitations these other arguments are unnecessary.

**B. Liability under Section 605(e)(4)**

Plaintiff also claims that Defendant is liable for a violation of 47 U.S.C. § 605(e)(4) by assembling or modifying a device for use in the unauthorized interception of DirecTV's satellite broadcast. "Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services [violated the statute] . . . ." 47 U.S.C. §605(e)(4).

Some courts find that in order to show a violation of § 605(e)(4) a plaintiff has the burden of proving three elements: (1) the defendant distributed or sold equipment; (2) the equipment primarily assisted in decrypting satellite signals; and (3) the defendant knew or had reason to know that the equipment primarily aided the unauthorized use of such signals. *See DirecTV, Inc., v. Hendrix*, 2005 WL 757562 (N.D.Cal. 2005); *DirecTV, Inc., v. Little*, No. CV-03-2407, RMW U.S. Dist. LEXIS 16350 at 17 (N.D.Cal.). According to some courts the purpose of § 605(e)(4) is to target upstream manufacturers and distributors of Pirate Access Devices. *See e.g. Hendrix* at *4.

In *DirecTV v. Oliver*, 2005 WL 1126786 (N.D. Cal.), a recent case in this district factually similar to this case, the Defendant was sued for a violation of § 605(e)(4) for the purchase of one Pirate Access Device. The court found that the act of installing and activating the device did not constitute the type of manufacturing and distribution the statute is meant to prohibit. *Id.* at *4. Because "[t]here must be a sufficient basis in the pleadings for the judgment to be entered," *id. citing Nishimatsu Const. Co., Ltd. V. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975), the court found insufficient to state a claim under § 605(e)(4) Plaintiff's assertions that by inserting a Pirate Access Device into a valid DirecTV Receiver Defendant engaged in the unlawful assembly or modification of a that device. A sufficient basis in the pleadings would require that a plaintiff allege that a defendant acted as an upstream manufacturer or distributor. *Id.*

In this case, as in *Oliver*, Plaintiff claims that "by removing and inserting Pirate Access Devices . . . or inserting illegally programmed Access Cards into valid DIRECTV Receivers, Defendant engaged in the unlawful assembly or modification of devices primarily of assistance in the unauthorized decryption of satellite programming." (Complaint at 6).

By defaulting Defendant admits to these contentions. Under the test laid out in *Little* and *Hendrix* this would not be a violation of § 605(e)(4) because Defendant is not acting as an upstream manufacturer or distributor. Plaintiff submits evidence to show that Defendant

actively engaged in conversations on piracy websites for the purpose of learning how to modify an Access Card. For this evidence to be sufficient under *Oliver* it must show that Defendant acted as an upstream manufacturer or distributor. Defendant's internet conversations indicate that he is an individual user learning how to personally use a device, not a manufacturer or distributor.

Plaintiff argues that the three-pronged test is an incorrect interpretation of the language of § 605(e)(4). Citing *DirecTV, Inc. v. Robson*, 420 F.3d 532 (5th Cir. 2005), Plaintiff asserts that this test ignores the statutory language specifically prohibiting assembly and modification, added in a 1988 amendment to the section. Plaintiff contends also that the *Little* and *Hendrix* decisions incorrectly rely on *International Cablevision, Inc. v. Sykes,* 75 F.3d 123 (2nd Cir. 1996) and *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381 (9th Cir. 1995), in formulating the test. Both of these appellate courts were asked to determine only if the distribution of a device was a violation of § 605(e)(4), and not whether modification would similarly be a violation. Plaintiff argues the restriction of the statute to sellers and distributors is inappropriate in this case.

Defendant admits to modification of a Pirate Access Device by his default as evidenced by his internet communications. The question before this court is whether to follow the reasoning of the Fifth Circuit, and find that an individual modifying one device is in violation of § 605(e)(4), or to follow the reasoning of multiple other courts that focus on up-stream manufacturers and distributors, not end-users. Given the plain language of the statute this Court agrees with the reasoning of the Fifth Circuit and finds that an individual user may be liable under § 605(e)(4) for modification of a Pirate Access Device for personal. Defendant admits by default to the modification and assembly of a Pirate Access Device. Because it is unnecessary to allege that Defendant is an upstream manufacturer or distributor liability is appropriate under this section.

### C. Damages

Damages are appropriate under § 2520. Section 2520(c)(2) states that "in any other action under this section, the court may assess as damages whichever is the greater of (A)

the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation;[2] or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.00." Plaintiff's complaint and subsequent Motion for Default Judgment request $10,000.00 statutory damages. Plaintiff calculates the per diem charge to be $77,400.00 which is $100.00 per day for a total of 774 days, the amount of time between Defendant's purchase date and the date DirecTV was able to deactivate the device. Some courts find that any grant of damages is discretionary and not mandatory. *DirecTV v. Grosman*, 2005 WL 1230791, 2 (N.D. Cal. 2005); DirecTV *v. Brown*, 371 F.3d 814, 817 (11th Cir. 2004).

Plaintiff requests statutory damages, not actual damages, for a violation of §605(e)(4). Damages are appropriate under 47 U.S.C. § 605(e)(3)(C)(i)(II) which provides for "statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just" for a violation of § 605(e)(4). Plaintiff requests $10,000.00 statutory damages total, which can be found under either § 605(e)(4) or §2520. Plaintiff does not request separate damages for violations of the different statutes.

Considering the *Eitel* factors, damages are appropriate in this case. Plaintiff properly alleges a violation of § 2520 and a violation of § 605(e)(4). The complaint is sufficient and the claim appears to be meritorious. There is no apparent excusable neglect, nor is there any strong policy argument which requires a decision on the merits. Given that Plaintiff provides significant evidence to support their claim it is unlikely that a serious dispute over material facts could develop. Finally, without judicial intervention, Plaintiff will be unable to collect the $10,000.00 in damages that Congress deems appropriate under either of the statutes discussed.

### D. Attorney Fees and Interest

Plaintiff also seeks attorney fees, which are recoverable under § 2520(b)(3) and § 605(e)(3)(B)(iii). Plaintiff requests $3,270.00 in attorney fees. Plaintiff supports the fee request

---

[2] Plaintiff calculates its actual damages as $5,828.22. This is 774 days multiplied by $7.53, the daily charge for a DirecTV high-end legitimate user.

with a declaration by Brandon Q. Tran, an attorney with Buchalter, Nemer, Fields & Younger, representing Plaintiff in this matter. Plaintiff submits billing records to support a request for $922.50 in pre-filing fees. (Exh. E to Colombo Dec.). Plaintiff submits no additional billing records to support the motion preparation fees of $787.50 and the appearance fees of $1,560.00

Finally, Plaintiff requests interest pursuant to 28 U.S.C. § 1961. Section 1961(a) allows for interest "on any money judgment in a civil case recovered in a district court . . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment." Given that money damages are appropriate, interest from the date of judgment is likewise appropriate.

**II. Judicial Notice: Federal Rules of Evidence, Rule 201(d)**

Plaintiff requests that this Court take judicial notice pursuant to Federal Rules of Evidence, Rule 201(d), of the Temporary Restraining Order served on TestSat operated by Jeff Ambler, an injunction requiring Mr. Ambler to submit all business records to DirecTV, and an order on Defendant's motion for summary judgment in an unrelated case, *DirecTV, Inc. v. Puccinelli,* U.S.D.C. (D. Kan.), Case No. 03-2287-GTV. The Restraining Order and the injunction both provide evidentiary support for Plaintiff's claim. The motion for summary judgment, however, is a legal analysis in a similar yet unrelated case. Given that Plaintiff successfully argues its claims above, there is no apparent need to take judicial notice of an unrelated case in a different jurisdiction.

**III. Conclusion**

This Court recommends to the district court that default judgment be granted pursuant to 18 U.S.C. § 2520 which allows for a private right of action for a violation of § 2511. Plaintiff properly alleges, and by defaulting Defendant admits, that he intentionally

intercepted Plaintiff's scrambled satellite broadcast in violation of the statute.

As to 47 U.S.C. § 605(e)(4) this Court recommends that default judgment be granted. Some courts find that, because the statute is focused on up-stream manufacturers and not

end-users, modifying a Pirate Access Device for personal use is not a violation. This Court finds persuasive the reasoning of the Fifth Circuit which interprets the plain language of the statute as concluding that any modification of the device, which is supported by evidence and Defendant admits to by default, is a violation of § 605(e)(4).

An award of $10,000 statutory damages is justified pursuant to either statute.

Attorney fees may be awarded under § 2520(b)(3) or § 605(e)(3)(B)(iii). Attorney fees are appropriate given that Plaintiff properly alleges a claim under § 2520 and § 605(e)(4). This Court recommends granting attorney fees in the amount of $3,270.00.

This Court recommends granting interest pursuant to 28 U.S.C. § 1961 which allows for post-judgment interest on any money judgment in a civil case recovered in a district court.

This Court recommends taking judicial notice of only the restraining order and injunction served on the operator of TestSat and not of *DirecTV, Inc. v. Puccinelli*, a similar yet unrelated case.

Respectfully submitted,

DATED: December 16, 2005

_____
JAMES LARSON
Chief United States Magistrate Judge